NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN CARLOS RAMADA MORA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY IMMIGRATION AND CUSTOMS ENFORCEMENT, ESSEX COUNTY, JOSEPH GONZALES, CHRISTOPHER HYNICK, CARL ULMER, VICTOR MORALES, ELENILSON SEGOVIA, JOSEPH SCIACCA, GABRIEL HOKE, LEVAN MONTELBANO, THEODORE SURICK, AND CFG HEALTH SYSTEMS, LLC,<br><br>Defendants. | Civil Action No. 11-3321 (ES)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Pending before this Court is Defendant CFG Health Systems, LLC's ("Defendant" or "CFG") motion to dismiss Plaintiff Juan Carlos Ramada Mora's ("Plaintiff" or "Mora") claim for medical negligence for failure to comply with New Jersey's affidavit of merit statute.[1] (D.E. No. 46, Brief of Defendant CFG Health Systems, LLC, in Support of Motion to Dismiss Plaintiff's Sixth Claim for Failure to Serve an Affidavit of Merit Pursuant to *N.J.S.A.* 2A:53A-26 through 29 ("Def. Br.")). The Court has jurisdiction under 28 U.S.C. § 1331. The Court has reviewed the parties' written submissions, without oral argument, pursuant to Fed. R. Civ. P.

---

[1] Plaintiff's failure to comply with the affidavit of merit statute "shall be deemed a failure to state a cause of action." N.J.S.A. § 2A:53A-29.

1

78(b). For the reasons set forth below, the Court DENIES Defendant's motion to dismiss Plaintiff's negligence claim.

I. Background

Plaintiff is a citizen of Aruba who was deported from the United States following detention at the Essex County Correctional Facility ("ECCF"). (D.E. No. 30, Amended Complaint ("Compl.") ¶¶ 18, 21-22). Defendant CFG is the health and medical provider at ECCF. (*Id.* ¶ 11; Certification of James R. Varrell, M.D. ("Varrell Cert.") ¶ 4). Dr. Varrell is a licensed physician and the sole member of CFG. (Varrell Cert. ¶¶ 1-2).

On June 18, 2010, while in custody at ECCF, Plaintiff filed an application for stay of deportation with the Department of Homeland Security. (Compl. ¶ 24). Plaintiff stated in his application that "a stay of removal was necessary until [he] received proper medical treatment to treat the injuries sustained while under "ICE" custody at the [ECCF]." (*Id.*). Plaintiff's request was subsequently denied and Plaintiff was never given any medical care. (*Id.*). Plaintiff arrived in Aruba on July 6, 2010. (*Id.* ¶ 25). Plaintiff has remained in Aruba without access to the United States since July 2010. (*See id.* ¶¶ 24-25).

Plaintiff alleges that he was physically assaulted "on at least three separate occasions" while under physical custody and supervision of ECCF, which resulted in "serious injuries throughout his entire body." (*Id.* ¶ 23). Plaintiff claims he was "denied medical service while in custody at [ECCF] despite filling out medical forms requesting such medical service." (*Id.*).

Plaintiff's sixth and sole claim against Defendant CFG is for "negligence due to failure to provide medical care." (*Id.* ¶¶ 46-49). Plaintiff alleges that he sustained physical and mental injuries, which "could have been prevented or cured had Defendants provided proper and timely medical care; but for Defendants [sic] failure to do so it is highly believed that such injuries are

permanent." (*Id.* ¶ 48). Plaintiff names CFG as one of the negligent parties and claims that CFG owed him a duty of care. (*Id.* ¶46). That duty was allegedly breached when CFG failed to provide timely medical care. (*Id.*).

## II. Procedural History

Plaintiff filed an Amended Complaint on July 13, 2012, which named CFG as a Defendant. (D.E. No. 30, Compl. ¶¶ 11). CFG filed its Answer to Plaintiff's Amended Complaint on July 17, 2012. (D.E. No. 31, Answer on Behalf of Defendant CFG Health Systems, LLC, to Plaintiff's Second Amended Complaint ("Ans.")). CFG filed the instant motion to dismiss on January 18, 2013. (D.E. No. 46, Def. Br.).

## III. Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). However, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations." *McCargo v. Hall*, No. 11-553, 2011 WL 6725613, *1 (D.N.J. 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Contradictory factual assertions on the part of defendants must be ignored. *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with a defendant's liability' . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

**IV.    Discussion**

Defendant argues that, pursuant to N.J.S.A. § 2A:53A-27, "Plaintiff was required to provide Defendant CFG with an affidavit of merit within 120 days of the filing of Defendant CFG's Answer on July 17, 2012, or no later than on or about November 17, 2012." (Def. Br. 3). To date, "Plaintiff has failed to serve the required Affidavit of Merit." (*Id.*).

On the other hand, Plaintiff alleges, and CFG does not dispute, that he served CFG with numerous medical documents that specify "Plaintiff's medical injuries, condition, treatment and prognosis" beginning in August 2010 and ending in July 2012. (D.E. No. 49, Plaintiff's Brief in Opposition of Defendant's Affidavit of Merit Motion ("Pl. Opp. Br.") at 9).

4

New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-26 to 29 (2010), "impose[s] requirements for initiating and maintaining certain professional malpractice actions." *Alan J. Cornblatt, P.A. v. Barow*, 708 A.2d 401, 403 (N.J. 2001). The statute applies to federal courts reviewing New Jersey medical negligence claims. *See Chamberlain v. Giampapa*, 210 F.3d 154, 157 (3d Cir. 2000). The affidavit of merit statute provides in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. § 2A:53A-27.

The purpose of "the statute is to require plaintiffs to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early state of the litigation." *Vitale v. Carrier Clinic, Inc.*, 409 F. App'x 532, 533 (3d Cir. 2010) (quoting *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, 985 (N.J. 2010)) (citations omitted). "[T]he statute's goals [are] twofold, intending 'not only to dispose of meritless malpractice claims early in the litigation, but also to allow meritorious claims to move forward unhindered.'" *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 274 (3d Cir. 2002) (quoting *Burns v. Balafsky*, 766 A.2d 1095, 1099 (N.J. 2001)). Generally, "[f]ailure to comply with the [affidavit of merit statute], either strictly or substantially, will result in dismissal with prejudice" for failure to state a cause of action. *Kindig v. Gooberman*, 149 F. Supp. 2d 159, 163 (D.N.J. 2001); *see also Cornblatt*, 708 A.2d at 415.

5

Here, the claim at issue is for damages for mental and physical injuries resulting from an alleged act of negligence by CFG. CFG is a licensed physician[2] and worked as the health and medical provider at the ECCF when Plaintiff was allegedly injured. Accordingly, the affidavit of merit statute applies and Plaintiff must comply with its requirements.

### a. Strict Compliance

To strictly comply with the affidavit of merit statute, Plaintiff must, within 120 days of the Answer being filed,[3] provide Defendant CFG with an affidavit, i.e., "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Cornblatt*, 708 A.2d at 410 (quoting *Black's Law Dictionary* 58 (6th ed. 1990)). The affidavit must be of a licensed physician and address whether there is a reasonable probability that CFG's care or skill fell outside acceptable standards. *See id.* at 412.

Plaintiff argues that he timely provided CFG with physician-certified letters and medical records, thereby strictly satisfying the affidavit of merit statute. (Pl. Opp. Br. 8-9). Plaintiff's letters and medical records merely specify the "medical injuries, condition, treatment, and prognosis." (*Id.* at 9). They do not include an affidavit from a licensed physician, as the statute requires. Because Plaintiff failed to provide an affidavit of merit from a licensed physician

---

[2] Under the affidavit of merit statute, a "licensed person" includes any person who is licensed as "a physician in the practice of medicine or surgery." N.J.S.A. § 2A:53A-26(f). James R. Varrell, M.D., is a licensed physician and the sole member of CFG. Thus, Plaintiff's claim against CFG is effectively a claim against Dr. Varrell, a licensed person covered by the statute.

[3] The statute compels Plaintiff to provide an affidavit of merit within 60 days of the answer being filed, but a court may grant Plaintiff an additional 60 days upon a finding of good cause. *See* N.J.S.A. § 2A:53A-27. Here, the issue of whether Plaintiff showed good cause for additional time beyond the 60-day limitation is immaterial because Plaintiff never sought such additional time.

within 120 days of the Answer being filed,[4] Plaintiff fails to strictly comply with the Affidavit of Merit Statute.

### b. The Substantial Compliance Doctrine

"[T]he New Jersey Supreme Court has held that the purpose of the affidavit of merit statute does not require strict compliance." *Kindig*, 149 F. Supp. 2d at 163. "Where there has not been strict compliance with the statute, courts" may invoke the substantial compliance doctrine. *Id.* at 163-64. When applied, the doctrine allows a plaintiff who substantially complies with the requirements of the statute to survive dismissal. *Id.* To determine whether a plaintiff substantially complies with the statute:

> courts should apply a five-factor substantial compliance test . . . [which] requires that a defaulting party demonstrate the following: (1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

*Id.* (citations omitted).

The test "requires a fact-sensitive analysis . . . to determine whether reasonable effectuation of the statute's purpose has occurred." *Id.* at 164 (quoting *Galik v. Clara Maas Med. Ctr.*, 771 A.2d 1141, 1151 (N.J. 2001)) (internal quotations omitted). The court must "assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable." *Id.*

First, Plaintiff demonstrates a lack of prejudice as to Defendant CFG because there has been no showing of "loss of evidence or undue additional defense costs . . . [and] . . . no showing of

---

[4] Plaintiff filed his Amended Complaint on July 13, 2012 (D.E. No. 30); CFG filed its Answer to Plaintiff's Amended Complaint on July 17, 2012 (D.E. No. 31); CFG moved to dismiss on January 18, 2013, (D.E. No. 46).

7

prejudice . . . that would outweigh the strong preference for adjudication on the merits rather than final disposition from procedural reasons." *See id.* (quoting *Mayfield v. Cmty. Medical Assocs.*, 762 A.2d 237, 243 (N.J. Super. Ct. 2000)) (internal quotations omitted). Though CFG argues that it has been prejudiced because it has been required to litigate this matter for more than a year, (D.E. No. 52, Defendant's Reply Letter to Pl. Opp. Br. ("Def. Reply") at 5), merely defending "against a potentially meritorious claim" is not legal prejudice. *Kindig*, 149 F. Supp. 2d at 164.

Second, Plaintiff demonstrates reasonable notice of his claim against CFG because he served CFG with his Complaint and his medical documents in a timely manner. (Pl. Opp. Br. 12). Plaintiff, however, does not pass the substantial compliance test because he fails to demonstrate both a series of steps taken to comply with the statute and a general compliance with the purpose of the statute. The statute demands that Plaintiff show its claim has merit by providing an affidavit of a licensed physician to show there "exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. § 2A:53A-27. The statute is "designed as a tort reform measure and requires a plaintiff in a malpractice case to make a threshold showing that the claims asserted are meritorious." *Galik*, 771 A.2d at 1147.

In *Galik*, the plaintiff's attorney provided medical records to a board certified neurosurgeon before commencing the suit and received a report in which the neurosurgeon opined "that there was a substantial deviation from the standard of medical care given to [the] patient . . . ." 771 A.2d at 1144. The neurosurgeon provided a supplemental report several months later that set forth specific allegations against individual defendants by name. *Id.* at 1144-46. The *Galik* court

held that the neurosurgeon's report substantially complied with the purpose of the affidavit of merit statute because "they identif[ied] [the defendants] by name and describe[d] their malpractice with specificity." *Id.* at 1151.

Here, Plaintiff served numerous medical records on CFG that merely "specify Plaintiff's medical injuries, condition, treatment and prognosis." (Pl. Opp. Br. 9). Plaintiff argues that since Plaintiff procured and sent the medical documents to Defendant, Plaintiff demonstrated reasonable steps to comply with the statute. (Pl. Opp. Br. 11-12; *see also* D.E. No. 49, Exs. 22-23, 35, 38-39, 41-44, 46, 48-49, 52, 55). Plaintiff also contends that these records "substantially complied with the heartland principle of the statute." (Pl. Opp. Br. 9).

The Court disagrees and finds that Plaintiff's medical documents do not fulfill the reasonable effectuation of the statute's purpose. The statute does not call for a physician's statement of Plaintiff's medical diagnosis. Rather, it requires an affirmation that specifically addresses Defendant CFG's treatment and whether it "fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. § 2A:53A-27. Notably absent from the documents is any statement from a physician about Defendant CFG's care, skill, knowledge, practice, or work that is the subject of the Complaint. The medical documents produced by Plaintiff do not mention Defendant CFG's conduct; in fact, they do not mention CFG at all. The steps taken by Plaintiff to procure and produce the documents do not fulfill the statute's purpose of showing that a claim is meritorious against Defendant CFG.

Thus, Plaintiff's proffered medical documents fail to comply with the purpose of the statute because they neither mention Defendant CFG by name nor describe CFG's care, skill, knowledge, practice, or work with any specificity.

### c. Dismissal with Prejudice and Extraordinary Circumstances

"Failure to comply with the [Affidavit of Merit Statute], either strictly or substantially, will result in dismissal with prejudice," unless extraordinary circumstances justified a failure to comply with the procedural requirement, in which case failure to comply will result in dismissal without prejudice. *Kindig*, 149 F. Supp. 2d at 163; *see also Tischler v. Watts*, 827 A.2d 1036, 1038 (N.J. 2003). Plaintiff's failure to comply with the Affidavit of Merit Statute, both strictly and substantially, warrants dismissal of his claim. However, the Court will now weigh whether extraordinary circumstances entitle Plaintiff to a remedy of dismissal without prejudice.

"[T]he extraordinary circumstances analysis is fact-specific." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 309 (3d Cir. 2012). Courts have not defined the full scope of extraordinary circumstances, but have noted that extraordinary circumstances must be "exceptional and compelling." *Giampapa*, 210 F.3d at 162. Particularly, "attorney inadvertence is not such a circumstance entitling plaintiff to a remedy of dismissal of a complaint *without* prejudice." *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 783 (N.J. 2003) (emphasis in original).

Although courts have not defined the full scope of extraordinary circumstances, they have found extraordinary circumstances in cases where a plaintiff's failure to provide an affidavit of merit was beyond his control. *See Tischler*, 827 A.2d 1036, 1037-38 (finding extraordinary circumstances where the plaintiff endured radiation and chemotherapy treatment throughout the 120-day period); *see also Barreiro v. Morais*, 723 A.2d 1244, 1249 (N.J. Super. Ct. App. Div. 1999) (opining that a physician's indecipherable medical documents would promote the finding of an extraordinary circumstance if they had a "substantial bearing on [a physician's] preparation of the affidavit and prevented him from doing so in a timely fashion").

Conversely, courts have declined to find extraordinary circumstances in cases where a plaintiff's failure to provide an affidavit of merit was within his control. *See Hartsfield v. Fantini*, 695 A.2d 259, 264 (N.J. 1997) (finding "an attorney's failure to supervise staff or heavy workload to be insufficient to satisfy the 'extraordinary circumstances' requirement"); *see also Ferreira*, 836 A.2d at 784 (holding that "counsel's carelessness in misfiling defendant's answer and failing to calendar [the] matter does not constitute an extraordinary circumstance"); *see also Balthazar v. Atlantic City Med. Ctr.*, 816 A.2d 1059, 1066 (N.J. Super. Ct. App. Div. 2003) (holding that the defendant's delay in the production of records had no effect on the plaintiff's ability to obtain an affidavit of merit).

Here, Plaintiff points to the fact that he was deported, has not been in the United States since filing his Complaint, and is being treated by medical doctors in Aruba, as exceptional and compelling circumstances that entitle Plaintiff to dismissal without prejudice. (*See* Pl. Opp. Br. 13-14). Although Plaintiff was deported before filing his Complaint and has remained outside of the United States throughout this litigation, Plaintiff's attorney possessed his client's medical records and had the ability to obtain an affidavit of merit from a physician in the United States. By Plaintiff's own admission, he provided Defendant CFG with medical records that specified his medical injuries, condition, treatment and prognosis. Despite possessing these medical records, Plaintiff's attorney failed to obtain and provide CFG with an affidavit of merit. Because Plaintiff's attorney was able to acquire documents from his client and provide them to a physician within the United States for review, notwithstanding the fact that his client was outside of the United States, Plaintiff's deportation does not constitute an extraordinary circumstance that entitles Plaintiff to dismissal without prejudice.

### d. Common Knowledge Exception

Notwithstanding the above analysis, Defendant's motion to dismiss is denied because Plaintiff meets the common knowledge exception recognized by the Third Circuit. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) (citing *Hubbard v. Reed,* 774 A.2d 495, 499-500 (N.J. 2001)). [5]

Compliance with the Affidavit of Merit Statute is excused where "common knowledge makes apparent a claim's merit." *Id.* The common knowledge doctrine "applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of specialized knowledge of experts.'" *Hubbard v. Reed*, 774 A.2d 495, 499 (N.J. 2001) (quoting *Estate of Chin by Chin v. St. Barnabas Med. Ctr.,* 734 A.2d 778, 785 (N.J. 1999)).

In a common knowledge case, a plaintiff alleging medical malpractice "will not need expert testimony at trial to establish" a deviation from the standard of care. *Id* at 499-500 (ruling that "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint"). Thus, the New Jersey Supreme Court held that "an affidavit of merit is not required in common knowledge cases." *Id.* at 500. But since the Court must construe the common

---

[5] Though the common knowledge exception is not explicitly argued by Plaintiff, the Court notes that Plaintiff does indeed cite to *Hubbard*, the seminal case in New Jersey recognizing the common knowledge exception to the affidavit of merit requirement. (Pl. Op. Br. 8, 12). Although Defendant attempts to factually distinguish *Hubbard*, (Def. Reply 4), the Court finds such a distinction immaterial in light of *Hubbard*'s clear ruling that "the doctrine applies where jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." 774 A.2d at 499 (quoting *Estate of Chin*, 734 A.2d 778 (N.J. 1999)) (internal quotations omitted). Indeed, an alleged failure to provide medical care by the doctor charged with administering such care does not require expert testimony. *See Natale*, 318 F.3d at 580. As discussed in Section IV(d) of this Opinion, "no special expertise or expert testimony is needed to show, at the outset of a case, that the claim is not frivolous." *Id.*

knowledge exception narrowly, "case history shows that it has only been applied in exceptionally obvious cases of medical malpractice." *McBride v. County of Atlantic*, No. 10-2773, 2011 WL 3236212, at *4 (D.N.J. July 28, 2011) (discussing *Hubbard*, 774 A.2d at 498; *Palanque v. Lambert-Wooley*, 774 A.2d 501, 503-04 (N.J. 2001); *Estate of Chin by Chin*, 734 A.2d at 780 (N.J. 1999); *Bender v. Walgreen Eastern Co.*, 945 A.2d 120, 122 (N.J. Super. 2008)).

A physician's failure to diagnose a plaintiff's injuries is an obvious case of medical malpractice. *Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 WL 3651352, at *12 (D.N.J. Aug. 18, 2011). In *Bullock*, the plaintiff allegedly fractured his ankle and requested a physician to treat the injury. *Id.* at *1. While the plaintiff failed to submit an affidavit of merit, the Court held that a physician's "failure to observe and diagnose [an] injury" falls within the common knowledge exception. *Id.* at *12.

Similarly, here, Plaintiff alleges that he "was never treated or given basic medical care for his injuries while detained at ECCF even though said injuries were well documented and timely reported to the authorities there prior to him being deported." (Pl. Op. Br. 7). In his Complaint, Plaintiff alleges that a "lack of medical care flourished while [he] was detained and defenselessly handcuffed at the Essex County Correctional Facility in Newark." (Compl. ¶ 2). Thus, an "average layperson could apply his or her general understanding and knowledge to find that the defendant in this case . . . breached a duty of care" by failing to tend to Plaintiff's medical injuries. *Hubbard*, 774 A.2d at 501. Plaintiff will not need to "present expert testimony to establish [Defendant's] negligence at trial and, therefore, [is] not required to obtain an expert's affidavit prior to trial to demonstrate that [his] claim has threshold merit." *Id.*

Defendant disputes Plaintiff's claim that the "injuries were well-documented and timely reported to the authorities and also claims that "Plaintiff did not seek medical attention at the

Essex County Correctional Facility at any time during his detention at that facility." (Def. Reply 3). Further, Defendant notes that Plaintiff was detained at the "Hudson County Correctional Center from approximately June 14 through July 6, 2010" and Defendant did not provide medical services at that facility at that time. (Def. Br. 1).

This Court, however, is to construe all reasonable inferences to the non-moving party—here, Plaintiff. *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 298 (3d Cir. 2005) (citing *In re Adams Golf, Inc. Secs. Litig.,* 381 F.3d 267, 273 (3d Cir. 2004)). Moreover, this Court is to assume the veracity of the allegations contained in the Complaint when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). As such, "any contradictory factual assertions on the part of Defendants [will] not [be] credited." *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 (D.N.J. 2010).

Thus, taking all the allegations contained in the Complaint as true, and construing the common law exception narrowly, this Court finds that a non-expert juror can ascertain whether Defendant CFG was negligent in failing "to give basic medical care for [Plaintiff's] injuries." (Pl. Opp. Br. 7). Thus, Plaintiff's failure to provide an affidavit of merit is excused by the common knowledge exception.

### V. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiff's claim of negligence. Although Plaintiff failed to provide an affidavit of merit pursuant to N.J.S.A. § 2A:53A-27, it is well within the purview of the ordinary juror to determine whether Defendant's alleged failure to give basic medical care constitutes negligence.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**